**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RONDA COOPER, CORAL FRASER and GILBERT MANDA, *on behalf of themselves and all others similarly situated*, | Case No. 1:23-cv-09485-PAE |
| Plaintiffs, | The Honorable Paul A. Engelmayer, United States District Judge |
| v. | |
| MOUNT SINAI HEALTH SYSTEM, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

David S. Almeida
Britany A. Kabakov
ALMEIDA LAW GROUP LLC
849 W. Webster Avenue
Chicago, Illinois 60614
T: (708) 529-5418
david@almeidalawgroup.com
britany@almeidalawgroup.com

James J. Bilsborrow
WEITZ & LUXENBERG, PC
New York Bar No. 4702064
700 Broadway
New York, NY 10003
(212) 558-5500
jbilsborrow@weitzlux.com

*Counsel for Plaintiffs & the Classes*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND OF THE LITIGATION ....................................................................... 2

SUMMARY OF THE PROPOSED SETTLEMENT TERMS ........................................ 4

   1.   The Settlement Class ........................................................................................ 4

   2.   Settlement Benefits .......................................................................................... 5

   3.   Claims Administration Costs, Attorneys' Fees and Expenses & Service Awards .............. 5

   4.   Settlement Administration & Notice to the Settlement Class ............................ 6

   5.   The Claims Procedure, Objections & Opt-Outs .............................................. 7

   6.   Scope of the Release ........................................................................................ 8

LEGAL STANDARD ...................................................................................................... 9

DISCUSSION ................................................................................................................ 11

  I.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES. .................. 11

    A.   The Settlement Class Satisfies the Requirements of Rule 23(a) ..................................... 11

      1.   Settlement Class Members are so numerous that joinder of all is impracticable. ...... 11

      2.   There are questions of law and fact common to the Settlement Class ...................... 11

      3.   The claims of the proposed Class Representatives are typical. .............................. 12

      4.   Class Representatives will adequately protect the interests of the Settlement Class. 13

    B.   The Settlement Class meets the Requirements of Rule 23(b) ...................................... 14

      1.   Common questions of law & fact predominate over any questions affecting only .. 14
         individual members of the Settlement Class. ........................................................ 14

      2.   A class action is superior to other methods for the fair & efficient adjudication of . 15
         the controversy. ............................................................................................... 15

  II.   THE SETTLEMENT MEETS THE REQUIREMENTS FOR PRELIMINARY APPROVAL UNDER
      RULE 23(E)(2). ........................................................................................................ 16

    A.   The proposed Class Representatives & proposed Class Counsel have ......................... 16
        adequately represented the Class. ...................................................................... 16

    B.   The Settlement was negotiated at arm's length. ...................................................... 17

    C.   The Settlement has no obvious deficiencies & does not grant preferential ................. 18
        treatment to any Class Members. ....................................................................... 18

      1.   The costs, risks and delay of trial & appeal are considerable. ............................... 19

      2.   The proposed method of distributing relief & processing claims is objective, ........ 19
        efficient and fair. ............................................................................................. 19

      3.     Attorneys' Fees and Costs and Expenses as well as the Service Awards that........... 20

             Plaintiffs will request are reasonable and appropriate. ............................................ 20

      4.     Disclosure of side agreements. ................................................................................. 21

    D.    The Settlement treats Class Members equitably relative to each other. ....................... 21

III.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM.................................. 21

IV.    THE COURT SHOULD APPOINT THE SETTLEMENT ADMINISTRATOR................................ 22

V.    THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING. ........................................ 22

CONCLUSION................................................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................. 15

*Bolanos v. Norwegian Cruise Lines Ltd.*,
   212 F.R.D. 144 (S.D.N.Y. 2002) ........................................... 13

*Charron v. Pinnacle Grp. N.Y. LLC*,
   874 F. Supp. 2d 179 (S.D.N.Y. 2012)................................... 22

*Charron v. Wiener*,
   731 F.3d 241 (2d Cir. 2013) ................................................. 10

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) ....................................................11

*Dornberger v. Metropolitan Life Ins. Co.*,
   203 F.R.D. 118 (S.D.N.Y. 2001) ........................................... 20

*Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*,
   301 F.R.D. 116 (S.D.N.Y. 2014) ...........................................11

*Frasco v. Flo Health, Inc.*,
   2024 WL 4280933 (N.D. Cal. Sept. 23, 2024)...................... 19

*Girault v. Supersol 661 Amsterdam, LLC*,
   2012 WL 2458172 (S.D.N.Y. June 28, 2012) .......................11

*Hadel v. Gaucho, LLC*,
   2016 WL 1060324 (S.D.N.Y. Mar. 14, 2016) ........................ 9

*In re Advocate Aurora Health Pixel Litig.*,
   740 F. Supp. 3d 736 (E.D. Wis. 2024) ........................... 12, 18

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) .......................................... 15

*In re AOL Time Warner, Inc.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ........................... 16

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) ......................... 9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) ................................................... 13

*In re Novant Health, Inc.*,
  2024 WL 3028443 (M.D.N.C. June 17, 2024) ................................................................ 12, 19

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................................ 17

*In re TikTok, Inc., Consumer Priv. Litig.*,
  565 F. Supp. 3d 1076 (N.D. Ill. 2021) ....................................................................... 15

*In re TJX Cos. Retail Sec. Breach Litig.*,
  246 F.R.D. 389 (D. Mass. 2007) ................................................................................ 19

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) ...................................................................................... 13

*McBean v. City of New York*,
  228 F.R.D. 487 (S.D.N.Y. 2005) ............................................................................... 14

*McReynolds v. Richards-Cantave*,
  588 F.3d 790 (2d Cir. 2009) ........................................................................................ 9

*Millien v. Madison Square Garden Co.*,
  2020 WL 4572678 (S.D.N.Y. Aug. 7, 2020) ............................................................. 16

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002) .................................................................................... 14

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012) ....................................................................... 17

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ................................................................................................... 16

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015) ........................................................................................ 12

*The Bank of N.Y. Mellon Corp.*,
  2010 WL 2643307 (S.D.N.Y. June 25, 2010) ........................................................... 19

*Torretto v. Donnelley Fin. Sols., Inc.*,
  2023 WL 123201 (S.D.N.Y. Jan. 5, 2023) ................................................................ 20

*Velez v. Novartis Pharms. Corp.*,
  2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ............................................................. 9

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................................... 12

*Zeltser v. Merrill Lynch & Co., Inc.*,
   2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ........................................................................ 15

*Zivkovic v. Laura Christy LLC*,
   329 F.R.D. 61 (S.D.N.Y. 2018) ........................................................................................ 12

**Statutes**

28 U.S.C. § 1292 ........................................................................................................................ 3

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................ *passim*

Plaintiffs Ronda Cooper, Coral Fraser and Gilbert Manda ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through undersigned counsel, submit this Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement. Plaintiffs respectfully request that this Honorable Court grant preliminary approval of the Parties' proposed class action settlement under Federal Rule of Civil Procedure 23. Defendant Mount Sinai Health System, Inc. ("Mount Sinai" or "Defendant" and collectively with Plaintiffs, the "Parties") does not oppose the relief sought in this motion.[1]

## **INTRODUCTION**

After eighteen months of litigation and a contested, arm's-length mediation, Plaintiffs and Mount Sinai reached the Settlement Agreement, which is fair, adequate and reasonable. Further to this Agreement, Mount Sinai will, if approved by this Court, pay $5,256,588.00 into a non-reversionary fund to benefit approximately 1,314,147 individuals whose confidential health information was allegedly compromised by Mount Sinai's application of the Facebook Meta Pixel and Conversions Application Programming Interface (CAPI) on its Web Properties. Throughout the pendency of the case, Mount Sinai has disputed and continues to dispute the merits of Plaintiffs' claims. Foregoing years of potentially protracted litigation and instead receiving monetary renumeration in the near term is an excellent result for Settlement Class Members. The proposed Settlement is within the range of reasonableness and warrants the provision of class notice so that Settlement Class Members may be apprised of the terms of the Settlement and weigh in with their responses, which Class Counsel expect to be overwhelmingly positive.

---

[1] Unless otherwise indicated, capitalized terms refer to and have the same meaning as set forth in the Settlement Agreement, which is attached as **Exhibit 1** to the Joint Declaration submitted herewith.

Given the strength and overall fairness of this Settlement, Plaintiffs respectfully request that this Court: (i) preliminarily approve the Settlement as fair, adequate, reasonable and within the reasonable range of possible final approval; (ii) appoint Plaintiffs Ronda Cooper, Coral Fraser and Gilbert Manda as Class Representatives; (iii) appoint Almeida Law Group LLC as Class Counsel; (iv) provisionally certify the Settlement Class under Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (v) approve the Parties' proposed notice program and confirm that it is appropriate notice that satisfies due process and Rule 23; (vi) schedule a Final Approval Hearing and (vii) set deadlines for Settlement Class Members to submit claims and to object to or exclude themselves from the Settlement.

## BACKGROUND OF THE LITIGATION

On October 27, 2023, Plaintiffs commenced this class action lawsuit alleging that their personal health information and personally identifiable information was collected and shared with Facebook through Mount Sinai's implementation of the Facebook Pixel and CAPI on its Web Properties. *See* ECF No. 1. On January 12, 2024, Plaintiffs filed a first amended class action complaint, which asserted ten claims against Mount Sinai under federal and New York state law: (1) violation of the federal Electronic Communications Privacy Act for an alleged unauthorized interception, use, and disclosure; (2) violation of the New York Deceptive Trade Practices; (3) negligence; (4) invasion of privacy; (5) breach of implied contract; (6) breach of fiduciary duty; (7) unjust enrichment; (8) breach of confidence; (9) constructive bailment; and (10) breach of implied covenant of good faith and fair dealing. *See* ECF No. 16.

Mount Sinai moved to dismiss the amended complaint on January 26, 2024, in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* ECF Nos. 18-19. The motion was fully briefed on February 16, 2024. *See* ECF Nos. 20-21. On July 30, 2024, the

Court granted in part and denied in part Mount Sinai's Rule 12(b)(6) motion to dismiss. *See* ECF No. 28. In particular, the Court denied the motion as to Plaintiffs' claim under the federal Wiretap Act of 1968, as amended by the Electronic Communications Privacy Act of 1986 (the "Wiretap Act"), the New York Deceptive Trade Practices Act, negligence, invasion of privacy, breach of implied contract, breach of fiduciary duty, breach of confidence, constructive bailment, and breach of implied covenant of good faith and fair dealing. *Id.* Mount Sinai filed an answer to the amended complaint on August 27, 2024. *See* ECF No. 36.

On August 20, 2024, Mount Sinai moved under 28 U.S.C. § 1292(b) to certify the Court's decision on the federal Wiretap Act's tortious or criminal conduct exception to the United States Court of Appeal for the Second Circuit for immediate appellate review. *See* ECF Nos. 32-33. The motion was fully briefed on September 5, 2024. *See* ECF Nos. 39-40. On September 6, 2024, the Court denied Mount Sinai's motion for leave to file an interlocutory appeal without prejudice. Contemporaneous to that decision, on September 11, 2024, the Court entered a scheduling order for depositions and fact discovery, after which the Parties would provide the Court with their respective positions on class certification and summary judgment briefing. *See* ECF Nos. 41-43.

From September 2024 to March 2025, the Parties propounded and responded to formal discovery. *See* Declaration of Almeida Law Group LLC in Support of Preliminary Approval of Class Action Settlement ("Almeida Decl." ¶ 13), submitted herewith. The Parties engaged in frequent communications to exchange information so that each side could better understand the nature and extent of the use of tracking technologies on Mount Sinai's Web Properties, as well as potential claims and defenses, and the scope of damages if Plaintiffs were successful in litigation. *Id.* In the midst of ongoing fact discovery, the Parties also agreed to mediate the case. *Id.* ¶ 15.

On March 31, 2025, the Parties engaged in a full-day mediation before Mr. Bruce A. Friedman, *Esq*. of JAMS in Los Angeles. *Id.* ¶ 16. The mediation did not result in resolution, so the Parties continued settlement discussion with and without the assistance of Mr. Friedman. *Id.* ¶ 17. Those efforts were ultimately successful and resulted in a settlement in principle through Mr. Friedman on April 3, 2025. *Id.* ¶ 18. On April 4, 2025, the Parties notified the Court of their Settlement. *See* ECF No. 58. The parties thereafter worked cooperatively to execute their formal settlement agreement, submitted herewith. *See generally* Almeida Decl.

## SUMMARY OF THE PROPOSED SETTLEMENT TERMS

As detailed herein, the proposed Settlement provides a straightforward claims process by which Settlement Class Members may obtain an award from the Settlement or exclude themselves or object. In exchange for Settlement and monetary benefits, the Settlement Class Members will release any and all claims against Mount Sinai arising from or related in any way to the claims that have been brought or could have been brought in the Litigation.

### 1. The Settlement Class

The Settlement provides for the certification of the Settlement Class, defined as "[a]ll Mount Sinai MyChart account holders who logged into their MyChart accounts through https://mychart.mountsinai.org/ between October 27, 2020 and October 27, 2023." SA, ¶ 1.40. The Settlement Class consists of approximately 1,314,147 individuals. *Id.* A Settlement Class Member is any Person who falls within the definition of the Settlement Class. *Id.* ¶ 1.41. The Settlement Class excludes: (a) officers and directors of Defendant, its agents, affiliates, subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or the Released Persons have a controlling interest; (b) all Settlement Class Members who timely and validly

exclude themselves from the Settlement Class; (c) the Judge assigned to evaluate the fairness of this Settlement and their immediate family members and staff; and (d) Class Counsel. *Id.* ¶ 1.40.

### 2. Settlement Benefits

The Settlement provides Class Members with timely and tangible benefits targeted at remediating the specific harms they allegedly suffered using Defendant's Web Properties as detailed in the Amended Complaint. The monetary benefits of the Settlement are available to all Settlement Class Members through the $5,256,588.00 Settlement Fund to be funded by Defendant. S.A. ¶ 2.1. The Settlement Fund will be used to pay for (i) the reasonable Cost of Claims Administration, (ii) any Attorneys' Costs and Expenses approved by the Court; (iii) any Attorneys' Fees Award approved by the Court; (iv) any Service Awards approved by the Court; (v) any benefits to Settlement Class Members, as distributed pursuant to the terms to the terms and conditions of this Agreement and (vi) any *cy pres* distribution approved by the Court. *Id.* ¶ 2.6. Settlement Class Members who submit valid Claim Forms will receive a *pro rata* cash distribution from the monies remaining in the Net Settlement Fund after the payment of any Attorneys' Fee Award and Service Award. *Id.* ¶ 3.5.

### 3. Claims Administration Costs, Attorneys' Fees and Expenses & Service Awards

As part of the Settlement, Mount Sinai agrees to pay the costs and expenses incurred through Claims Administration including, but not limited to, the costs of notice to the Settlement Class Members with such costs to come out of the Settlement fund. SA, ¶ 3.1. The Settlement Agreement also permits Class Counsel to request an Attorneys' Fee Award not to exceed thirty-five percent of the Settlement Fund, as well as Attorneys' Costs and Expenses incurred in prosecuting the litigation. *Id.* ¶¶ 8.1-8.2. In addition, the Settlement Agreement permits Class Counsel to request approval of a service award of $2,500.00 for each of the Plaintiffs, which

recognizes their efforts and commitment on behalf of the Settlement Class. *Id.* ¶ 8.3. Class Counsel will move separately for approval of an Attorneys' Fee Award, Attorneys' Costs and Expenses and Service Awards fourteen days prior to the Objection Deadline. *Id.* ¶ 8.4. The Parties did not discuss or agree upon payment of attorneys' fees and expenses or Plaintiffs' proposed service awards until after they agreed on all material terms of relief to the Settlement Class. *Id.* ¶¶ 8.1-8.3.

### 4. Settlement Administration & Notice to the Settlement Class

The Parties have selected Kroll, LLC, as approved by the Court, as Settlement Administrator through a competitive bidding process. SA, ¶ 1.38. Kroll, LLC is experienced in administering data privacy class claims. *See* Declaration of Frank Ballard of Kroll Settlement Administration LLC in Connection with Preliminary Approval of Settlement ("Kroll Decl.") (attached as Exhibit E to the Settlement Agreement).

To notify the Settlement Class, the Settlement describes the Notice Program. SA, ¶ 4.1. Because Mount Sinai has contact information for much of the Settlement Class, the Settlement requires Mount Sinai to provide the Settlement Administrator with the names, last known email address, and/or last known home address for the Settlement Class Members within thirty (30) days of the entry of the Preliminary Approval Order. *Id.* ¶ 4.2. The Settlement Administrator shall then send the Short-Form Notice to all Settlement Class Members within sixty (60) days of entry of the Preliminary Approval Order. *Id.* ¶ 4.3. The Settlement directs the Settlement Administrator to distribute the Short Form Notice by email to the greatest extent possible. *Id.* ¶ 4.4. To the extent that an email address is not available for a Settlement Class Member, notice shall be provided by USPS regular mail. *Id.* In addition, the Settlement Administrator shall create a dedicated Settlement Website, which will contain important documents regarding the case, including, but not

limited to, the Amended Complaint, Short-Form Notice, Long-Form Notice, and the Claim Form so that Claims may be submitted online. *Id.* ¶ 4.5.

### 5. The Claims Procedure, Objections & Opt-Outs

In order to receive their pro rata portion of the Settlement Benefits, all Settlement Class Members need to do is complete and submit a valid, timely and signed Claim Form. S.A. ¶ 3.3. Settlement Class Members may submit Claim Forms to the Settlement Administrator electronically via the Settlement Website or physically by mail. *Id.* Settlement Class Members must submit their Claim by the Claims Deadline set by the Court in the Preliminary Approval Order. *Id.* The Settlement Administrator will review and evaluate all Claims, and shall determine their validity, timeliness and completeness. *Id.* ¶ 3.4.

Subject to the terms and conditions of this Settlement Agreement, and sixty (60) days after the Effective Date, the Settlement Administrator shall provide a Claims Payment to each Claimant whose Claim Form has been approved by the Settlement Administrator or the Court. *Id.* ¶ 3.5. Each Claims Payment shall equal the pro rata share of the monies remaining in the Net Settlement Fund after the payment of any Attorneys' Fee Award and Service Award. *Id.* ¶ 3.5(a). Each Claims Payment shall be delivered to the digital or physical address provided by the Claimant on his or her Claim Form. *Id.* ¶ 3.5(b). For any Claim Payment returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make reasonable efforts to find a valid address and re-send the Claim Payment within thirty (30) Days after the payment was returned. *Id.* ¶ 3.6.

Settlement Class Members may opt out from receiving the Settlement's Benefits by individually signing and timely submitting written notice of such intent to the designated postal address established by the Settlement Administrator. *Id.* ¶ 5.1. The written notice must include:

(i) his/her name, current address, telephone number, and unique ID; (ii) a signature; (iii) the name and number of the case; and (iv) a statement that he or she wishes to be excluded from the Settlement Class for purposes of this Settlement. *Id.* Any Person who submits and valid and timely notice of their intent to be excluded from the Settlement Class shall not receive any benefits of or be bound by the Settlement's terms. *Id.* ¶ 5.2.

Settlement Class Members may also object to the Settlement by submitting written objections by mail to the Court, Class Counsel and Defendant's Counsel. *Id.* ¶ 6.1. Each Objection must (i) set forth the Settlement Class Member's full name, residential address, telephone number, and email address; (ii) contain the Settlement Class Member's original signature; (iii) contain proof that the Settlement Class Member is a member of the Settlement Class (*e.g.*, via a copy of the settlement notice); (iv) state that the Settlement Class Member objects to the Settlement, in whole or in part; (v) set forth a statement of the legal and factual basis for the Objection; (vi) provides copies of any documents that the Settlement Class Member wishes to submit in support of his/her position; (vii) identify all counsel representing the Settlement Class Member, if any; (viii) contain the signature of the Settlement Class Member's duly authorized attorney or other duly authorized representative, along with documentation setting forth such representation; and (ix) contain a list, including case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement in the past three (3) years. *Id.* ¶ 6.2. If a Settlement Class Member fails to timely file and serve an Objection pursuant to these requirements, the Objection shall not be treated as valid. *Id.* ¶ 6.5.

**6. Scope of the Release**

To receive Settlement Benefits, Plaintiffs and Settlement Class Members agree to release Mount Sinai and all affiliated entities from all past, present and future claims and causes of action

asserted or that could have been asserted, or that arise out of or are connected to the Litigation. S.A. ¶ 7.2. This includes the release of Unknown Claims that could have been raised in the Litigation. *Id.* ¶ 7.3.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires judicial approval of any proposed class action settlement. Fed. R. Civ. P. 23(e). Rule 23(e)(1)(B) directs a court to grant preliminary settlement approval and direct notice to the proposed class if the court "will likely be able to" grant final approval under Rule 23(e)(2) and "will likely be able to" certify a settlement class for purposes of entering judgment. Fed. R. Civ. P. 23(e)(1)(B). Courts "generally favor the resolution of civil actions, particularly class actions, through settlement." *Velez v. Novartis Pharms. Corp.*, 2010 WL 4877852, at *11 (S.D.N.Y. Nov. 30, 2010).

In considering whether to approve a proposed settlement, courts are mindful of the "strong judicial policy in favor of settlements particularly in the class action context." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009). Given this policy, "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007). Moreover, "[c]ourts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Hadel v. Gaucho, LLC*, 2016 WL 1060324, at *2 (S.D.N.Y. Mar. 14, 2016) (collecting cases).

Rule 23(e)(2) sets out the factors a court must consider in determining whether a proposed class action settlement is "fair, reasonable, and adequate." Those factors are whether:

(A)     the class representatives and class counsel have adequately represented the class;

9

    (B)      the proposal was negotiated at arm's length;

    (C)      the relief provided for the class is adequate, taking into account:

        (i)      the costs, risks, and delay of trial and appeal;

        (ii)      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)      the terms of any proposed award of attorneys' fees, including timing of payment; and

        (iv)      any agreement required to be identified under Rule 23(e)(3); and

    (D)      the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

As the Advisory Committee's note explains, subsections (A) and (B) focus on the "procedural" fairness of a settlement and subsections (C) and (D) focus on the "substantive" fairness of the settlement. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendments. These factors are similar to the "procedural" and "substantive" factors the Second Circuit developed prior to the amendment. *See Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) (explaining that courts evaluate procedural and substantive fairness of a class settlement). The 2018 amendment, however, recognizes that "[t]he sheer number of factors" considered in various Circuits "can distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendments. The 2018 Amendment "therefore directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." *Id.*

Here, the Court should grant preliminary approval because it "will likely be able to" both grant final approval to the Settlement as "fair, reasonable, and adequate," and certify the Settlement Class for purposes of entering judgment after notice and a final approval hearing.

## DISCUSSION

**I.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES.**

To determine whether the Court will likely be able to certify the Settlement Class for purposes of entering judgment on the Settlement, the Court looks to the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy) and the requirements of any subsection of Rule 23(b), here subsection (b)(3) (predominance and superiority). For the reasons set forth below, the Settlement Class meets all the necessary requirements for certification.

### A.    The Settlement Class Satisfies the Requirements of Rule 23(a).

1. <u>Settlement Class Members are so numerous that joinder of all is impracticable.</u>

Rule 23(a)(1) requires that "the class be so numerous that joinder of all members is impracticable." Numerosity does not require a fixed number of class members but "is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also Girault v. Supersol 661 Amsterdam, LLC*, 2012 WL 2458172, at *1 (S.D.N.Y. June 28, 2012) (finding numerosity where there were over 100 putative class members).

Here, there are approximately 1,314,147 individuals who are part of the Settlement Class. Joinder is thus impracticable, and the requirements of Rule 23(a)(1) are satisfied.

2. <u>There are questions of law and fact common to the Settlement Class.</u>

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Rule 23(a)(2) is a "low hurdle," *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014), and "for purposes of Rule 23(a)(2) even a single common

question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). Commonality requires only that the proposed class members' claims "depend upon a common contention," which "must be of such a nature that it is capable of class wide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Damages resulting from a "unitary course of conduct" are sufficient to show commonality. *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 85 (2d Cir. 2015) (cleaned up). "The claims for relief need not be identical for them to be common." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 69 (S.D.N.Y. 2018).

Here, Plaintiffs allege that each of the Settlement Class Members share the common, class-wide question of whether and to what extent Mount Sinai is liable for exposing their protected health information and personally identifying information through its use of the Meta Pixel. *See, e.g.*, Second Amended Complaint (ECF No. 49), ¶ 305 (listing common questions of law and fact). In addition, Plaintiffs allege that all Settlement Class Members can demonstrate damages resulting from the same course of conduct—namely, installation of the Meta Pixel on Mount Sinai's Web Properties. This requirement in the context of data privacy class action settlements is readily satisfied. *See, e.g.*, *In re Advocate Aurora Health Pixel Litig.*, 740 F. Supp. 3d 736, 745 (E.D. Wis. 2024) (granting final approval in pixel-tracking case); *In re Novant Health, Inc.*, 2024 WL 3028443, at *3 (M.D.N.C. June 17, 2024) (similar). Thus, these common questions, and others alleged in the Amended Complaint, are central to the causes of action brought here and will generate common answers that could be addressed on a class-wide basis.

### 3.   The claims of the proposed Class Representatives are typical.

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole."

Fed. R. Civ. P. 23(a)(3); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation omitted); *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002). The purpose of the typicality requirement is to ensure that "maintenance of a class action is economical and that the named plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (cleaned up).

Here, the claims of Plaintiffs and the Settlement Class Members all stem from the same course of conduct—the installation of the Meta Pixel on Mount Sinai's Web Properties, which, in turn allegedly compromised Class Members' protected health information and personally identifying information. *See, e.g.*, Second Amended Complaint (ECF No. 49), ¶ 306 (describing typicality). As such, typicality is satisfied.

4. <u>Class Representatives will adequately protect the interests of the Settlement Class.</u>

Rule 23(a)(4) requires that a representative plaintiff be able to provide fair and adequate representation for the class. To satisfy the adequacy requirement, Plaintiffs must establish that: (i) there is no conflict of interest between the class representative and other members of the class; and (ii) plaintiffs' counsel is qualified, experienced, and generally able to conduct the litigation. *Bolanos*, 212 F.R.D. at 156 (quoting *Marisol A.*, 126 F.3d at 378).

Here, Plaintiffs' interests are aligned with those of the Settlement Class Members in that they seek relief for injuries arising out of the same course of conduct through Mount Sinai's installation and use of tracking tools. *See, e.g.*, Second Amended Complaint (ECF No. 49), ¶¶ 250-97 (discussing Plaintiffs' experiences with Defendant) & 306 (demonstrating adequacy). Plaintiffs' and Settlement Class Members' private information was allegedly collected and disclosed—without their knowledge nor consent—by Mount Sinai to third parties like Meta in the

same manner and under the same circumstances using tracking tools. *Id.* Under the terms of the Settlement, Plaintiffs and Settlement Class Members will all be eligible for equivalent cash payments from the respective portion of the Net Settlement Fund to help remedy the alleged harms they have experienced as a result of Defendant's actions. *See* S.A. ¶ 2.1. In addition, proposed Class Counsel have significant experience as class action litigators, particularly in data privacy and security litigation and are well suited to advocate on behalf of the Settlement Class in this Litigation. *See, e.g.*, Almeida Decl. ¶¶ 31-39. Thus, the requirements of Rule 23(a) are satisfied.

**B.    The Settlement Class meets the Requirements of Rule 23(b).**

Plaintiffs seek to certify a settlement class under Rule 23(b)(3), which has two components: predominance and superiority. Here, Rule 23(b)(3) is satisfied because: (i) questions of law and fact common to Settlement Class Members predominate over any individual questions and (ii) the class action mechanism is superior to any other methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

1.    <u>Common questions of law & fact predominate over any questions affecting only individual members of the Settlement Class.</u>

"Class-wide issues predominate if resolution of some of the legal or factual questions . . . can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

In this case, the predominant issues are whether Mount Sinai was required to disclose to Settlement Class Members that it used tracking tools on its Web Properties and the alleged harm that arose when the personal information belonging to Settlement Class Members was allegedly

shared, without their consent, with companies like Meta. Other courts have recognized that the types of common issues arising from similar unauthorized disclosures predominate over any individualized issues. *See, e.g.*, *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1086 (N.D. Ill. 2021) ("Predominance is met because many of the issues of law and fact common to members of the Nationwide Class and Illinois Subclass, respectively, may be resolved "through generalized proof"—namely, by examining Defendants' uniform data collection and privacy practices against their legal obligations."); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312-15 (N.D. Cal. 2018) (finding predominance satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information"). The predominance requirement is satisfied here.

2. <u>A class action is superior to other methods for the fair & efficient adjudication of the controversy.</u>

Resolving this Litigation now through this class-wide settlement is superior to litigation by individual Settlement Class Members. Most Settlement Class Members lack the financial resources to prosecute individual actions, and the value of any individual claim is simply too low to justify individual cases. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (explaining that the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights" (internal quotation omitted)). Further, "[e]mploying the class device here will not only achieve economies of scale for Class Members, but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and preventing inconsistent adjudications." *Zeltser v. Merrill Lynch & Co., Inc.*, 2014 WL 4816134, at *3 (S.D.N.Y. Sept. 23, 2014). Accordingly, the Settlement Class is the superior method of adjudicating the action.

Here, there is little reason for proposed Class Members to prosecute individual actions. While the total alleged economic harm is significant, each individual claim is small compared to the costs of undertaking separate, individualized litigation. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985). Although Plaintiffs assert that the injuries resulting from Mount Sinai's alleged use of tracking tools are real, the cost of individually litigating against it would easily exceed the value of any relief that could be obtained by any one consumer. Thus, a class action is a superior method of adjudication. In sum, the proposed Class's claims satisfy Rule 23(b)(3)'s requirements and should be certified. Adjudicating individual actions here is impracticable: the amount in dispute for each class member is too small, the technical issues involved are too complex and the required expenses too costly. Thus, the Court may certify the Class for settlement under Rule 23(b)(3).

## II. THE SETTLEMENT MEETS THE REQUIREMENTS FOR PRELIMINARY APPROVAL UNDER RULE 23(E)(2).

The proposed Settlement is fair, reasonable, and adequate considering the relevant factors, and the Court should grant preliminary approval and direct notice because the Court will likely be able to grant final approval after considering those factors.

### A. The proposed Class Representatives & proposed Class Counsel have adequately represented the Class.

First, the Class Representatives and proposed Class Counsel have adequately represented the Settlement Class. *See* Fed. R. Civ. P. 23(e)(2)(A). The Class Representatives and proposed Class Counsel "have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *Millien v. Madison Square Garden Co.*, 2020 WL 4572678, at *5 (S.D.N.Y. Aug. 7, 2020).

16

Proposed Class Counsel have extensive experience in class action litigation in general and in cases involving data tracking in particular. *See* Almeida Decl. ¶¶ 31-39. Here, proposed Class Counsels' combined expertise allowed them to build a strong case in a complex area involving the application of novel legal theories to protect Class Members' health information. *Id.* Proposed Class Counsel also engaged in extensive case investigation and legal briefing to secure this successful result, resulting in the partial denial of Mount Sinai's motion to dismiss and, ultimately, a successful mediation position. *Id.* ¶¶ 3-4, 20 & 29. Similarly, the Class Representatives have adequately represented the Settlement Class. Plaintiffs were engaged by counsel to assist in pre-suit investigation, they reviewed and approved the allegations of the pleadings, participated in responding to discovery requests and kept apprised and provided input during the informal and formal mediation process. *Id.* ¶¶ 21-23 & 30. The Class Representatives also reviewed and approved the terms of the Settlement. *Id.* ¶ 30. Accordingly, the Class Representatives and proposed Class Counsel have adequately represented the Class, and this factor weighs in favor of preliminary approval. Fed. R. Civ. P. 23(e)(2)(A).

### B.    The Settlement was negotiated at arm's length.

Next, the Settlement satisfies Rule 23(e)(2)(B) as it is the product of hard-fought, arm's-length negotiations overseen by an experienced data privacy and class action mediator, Mr. Bruce A. Friedman of JAMS, during which Mount Sinai disputed Plaintiffs' allegations. *See* Fed. R. Civ. P. 23(e)(2)(B); *see also* Almeida Decl. ¶¶ 16-17. "To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012). Moreover, "great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997). Proposed Class Counsel

have assessed the potential risks and rewards of litigation and are of the opinion that the Settlement is an excellent result for the Settlement Class. *See* Almeida Decl. ¶¶ 40-44.

Further, the Settlement was reached only after a full-day, in-person, mediation session with Bruce A. Friedman, an experienced and neutral mediator. *See* Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note to 2018 amendments ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."). In short, this Settlement was negotiated at arm's length and was procedurally fair. *See* Fed. R. Civ. P. 23(e)(2)(B).

**C.    The Settlement has no obvious deficiencies & does not grant preferential treatment to any Class Members.**

Rule 23(e)(2)(c) requires examination of the relief provided by the Settlement. The benefits available to Class Members as a result of the Settlement are significant in comparison to the risk of obtaining no recovery or reduced recovery after protracted litigation. *See* Almeida Decl. ¶ 41. This Settlement ensures that Settlement Class Members will be compensated for the harms they have suffered as a result of Mount Sinai's use of tracking tools. Although the precise amount of the cash payment to each Class Member cannot be ascertained until after the Claims Deadline, the Net Settlement Fund will draw from a $5,256,588.00 Settlement Fund, thus ensuring that likely Claims Payment per Class Member is significant. *See* SA, ¶ 3.5.

The Settlement Benefits here are comparable to results reached in other data privacy cases concerning the use of the Meta pixel to collect private information. *See, e.g.*, *In re Advoc. Aurora Health Pixel Litig.*, 740 F. Supp. 3d at 745 (final approval granted for non-reversionary common fund settlement of $12.25 million for a class of approximately 2.5 million class members); *John v. Froedtert Health, Inc.*, 2023CV001935, ECF No. 40 (Milwaukee Cty. Cir. Ct. Case Sept. 29, 2023) (final approval granted for non-reversionary common fund settlement of $2 million for a class of

approximately 459,000 patients); *In re Novant Health, Inc.*, 2024 WL 3028443 (final approval granted for non-reversionary common fund settlement of $6.66 million for a class of approximately 1,362,165 million class members). As the relief provided through the Settlement is well within the range of possible approval, preliminary approval should be granted.

      1.   The costs, risks and delay of trial & appeal are considerable.

The benefits conferred by the Settlement are immediate and significant, and, although Class Counsel believes Plaintiffs' claims are strong, the expense, duration and complexity of protracted litigation would be substantial and the outcome uncertain. *See* Almeida Decl. ¶¶ 41-42. Proceeding with continued litigation would present risks inherent in class certification and proof of liability—both factors considered under this Circuit's test for final approval set forth in *Grinnell*.

For example, although plaintiffs have survived Rule 12 motions in privacy cases involving the Meta Pixel, winning class certification and an eventual jury verdict is far from certain. *See, e.g.*, *Frasco v. Flo Health, Inc.*, 2024 WL 4280933, at *1 (N.D. Cal. Sept. 23, 2024) (granting summary judgment in part in pixel-tracking case); *Hammon v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at Rule 56 stage); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397 (D. Mass. 2007) (denying certification of data breach class). Through the Settlement, Settlement Class Members gain significant benefits in the near term without having to face further risk of not receiving any relief.

      2.   The proposed method of distributing relief & processing claims is objective, efficient and fair.

Under the terms of the Settlement, the Settlement Administrator is responsible for assessing Claims and distributing Settlement benefits. SA, ¶¶ 3.2-3.5. All Settlement Class Members may file a Claim until the Claims Deadline, which will be set by the Court. *Id.* ¶ 3.3. The Settlement Administrator is charged with reviewing and evaluating each Claim Form, assessing the validity

of any required documentation, and ensuring Claims are submitted timely and completely. *Id.* ¶ 3.4. Class Members will also be able to contact the Settlement Administrator with any questions through the Settlement Website or a toll-free telephone number. Kroll Decl. ¶¶ 16-17. This procedure is objective, effective and fair.

### 3. Attorneys' Fees and Costs and Expenses as well as the Service Awards that Plaintiffs will request are reasonable and appropriate.

By separate motion (to be filed at least fourteen days before the Objection Deadline), Plaintiffs will seek Court approval of Attorneys' Costs and Expenses, Attorneys' Fee Award, and Service Awards. SA, ¶¶ 8.1-8.3. Doing so will give Settlement Class Members adequate time to evaluate such requests as they consider whether to opt out of or object to the Settlement. Rule 23(e)(2)(C)(iii) requires evaluation of the terms of any proposed attorneys' fees including the timing of any payment. The Settlement provides that attorneys' fees will be paid from the Settlement Fund only after a separate application is made, Settlement Class Members have an opportunity to object, and the Court determines the appropriate amount. *Id.* ¶¶ 8.1-8.3. Under the Settlement, proposed Class Counsel may request up to thirty-five percent of the Net Settlement Fund. *Id.* ¶ 8.1. Both the Short-Form and Long-Form Notice will also clearly explain that proposed Class Counsel may seek up to this amount in attorneys' fees.

The proposed Service Award to each Class Representative of $2,500.00 is also well within the range of awards granted to named plaintiffs in class proceedings. *See, e.g.*, *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) (noting in class actions that representative plaintiff awards from $2,500 and greater are commonly accepted); *Torretto v. Donnelley Fin. Sols., Inc.*, 2023 WL 123201, at *5 (S.D.N.Y. Jan. 5, 2023) (approving $2,500 service award). Simply put, proposed Class Counsel's request for fees and expenses as well Service

Awards will be supported by law and evidence and are additional bases for preliminary approval. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).

        4.  <u>Disclosure of side agreements.</u>

There are no additional agreements that require identification or examination under Rule 23(e)(3).

        **D.**    **The Settlement treats Class Members equitably relative to each other.**

The Court must also consider whether the Settlement treats Settlement Class Members equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats all Settlement Class Members fairly and equally, as all Members may obtain equal cash distributions from the Net Settlement Fund after the payment of any Attorneys' Fee Award and Service Award. SA, ¶ 3.5. This Rule 23(e) factor is thus satisfied, and because the Settlement satisfies all of Rule 23(e) requirements, preliminary approval should be granted.

**III.**    **THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM.**

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed settlement. For classes, like this one, certified under Rule 23(b)(3), the Parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2)(B) specifically permits notice to be sent by "U.S. Mail, electronic mail, or other appropriate means." The Notice Program—which provides for individual notice to the putative class—negotiated here is the best practicable, calling for Notice to be distributed by email to Class Members for whom Mount Sinai has email and by US mail for everyone else, and is also part of the reason for why the Parties settled a patient portal class. SA, ¶ 4.4.

In this Circuit, courts have explained that a Rule 23 Notice will satisfy due process where it describes the terms of the settlement generally, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. *See Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 191 (S.D.N.Y. 2012) (internal citations omitted). Here, the proposed Short Form Notice is clear, concise, and informs Settlement Class Members of the general terms of the Settlement, the proposed allocation of attorneys' fees, and provides information regarding the date, time and place of final approval. *See* SA, Ex. A. Further, the Short Form Notice directs Settlement Class Members to the Settlement Website, where they can view additional information about the Settlement and its terms, and view the Long Form Notice. *Id.*, Ex. B. As such, the Notice Program should be approved.

## IV.    THE COURT SHOULD APPOINT THE SETTLEMENT ADMINISTRATOR.

In connection with the Notice Program and Settlement Administration, Plaintiffs request that the Court appoint Kroll, LLC to serve as the Settlement Administrator. Kroll, LLC has a trusted and proven track record of supporting class action administration and extensive legal administration experience. *See* Kroll Decl. ¶ 2.

## V.    THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING.

The last step in the Settlement approval process is a final approval hearing at which the Court will make its final evaluation of the Settlement. Plaintiffs and proposed Class Counsel request that the Court schedule the Final Approval Hearing no earlier than one hundred and twenty (120) days after entry of the Preliminary Approval Order. SA, ¶ 10.1.[2]

---

[2] The Proposed Preliminary Approval Order, attached as Exhibit D to the Settlement Agreement, will also be provided to the Court as an editable Word document.

## **CONCLUSION**

The Settlement readily meets the standard for preliminary approval. Accordingly, Plaintiffs respectfully request that this Honorable Court enter an order:

(i) Preliminarily approving the Settlement and provisionally certifying the Settlement Class in accordance with the proposed Preliminary Approval Order (SA, Ex. D);

(ii) Approving the Notice Program and directing that Notice be distributed to the Settlement Class Members in accordance with the Notice Program;

(iii) Appointing Kroll, LLC as Settlement Administrator;

(iv) Approving the Claim Form and directing the Settlement Administrator to administer the Settlement in accordance with the provisions of the Settlement Agreement;

(v) Appointing Plaintiffs Ronda Cooper, Coral Fraser and Gilbert Manda as Class Representatives of the Settlement Class;

(vi) Appointing David S. Almeida and Britany A. Kabakov as Class Counsel;

(vii) Scheduling a Final Approval Hearing to consider the entry of the Final Approval Order and Judgment, and request for Attorneys' Fees, Expenses, and Service Awards, to be held approximately 120 days after entry of the Preliminary Approval Order and

(viii) such other relief as the Court deems just and proper.

Dated: May 5, 2025       Respectfully submitted,

            */s/ David S. Almeida*
            David S. Almeida
            New York Bar No. 3056520
            Britany A. Kabakov*
            **ALMEIDA LAW GROUP LLC**
            849 W. Webster Avenue

Chicago, Illinois 60614
T: (708) 529-5418
david@almeidalawgroup.com
britany@almeidalawgroup.com

**WEITZ & LUXENBERG, PC**
James J. Bilsborrow
New York Bar No. 4702064
700 Broadway
New York, NY 10003
(212) 558-5500
jbilsborrow@weitzlux.com

*pro hac vice admission*

*Attorneys for Plaintiffs & Putative Classes*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on May 5, 2025, the foregoing has been electronically filed with the Court today, causing notice of the same to be served on counsel of record by operation of the ECF system.

*/s/ David S. Almeida*