THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RONDA COOPER, CORAL FRASER and GILBERT MANDA, *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> MOUNT SINAI HEALTH SYSTEM, INC., <br><br> Defendant. | Case No. 1:23-cv-09485-PAE <br><br> The Honorable Paul A. Engelmayer, United States District Judge |

**DECLARATION OF ALMEIDA LAW GROUP LLC IN SUPPORT OF**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

David S. Almeida and Britany A. Kabakov jointly declare and state as follows:

1.      I, David S. Almeida, am an attorney admitted and licensed to practice law before the courts of the states of New York, Arizona, Illinois and Wisconsin. I am the Founder and Managing Partner of the Almeida Law Group LLC ("ALG"), a class action litigation boutique specializing in data privacy and consumer fraud cases. I serve as counsel of record for Plaintiffs Ronda Cooper, Coral Fraser and Gilbert Manda ("Plaintiffs") in the above-captioned case (the "Litigation").[1]

2.      I, Britany A. Kabakov, am an attorney admitted and licensed to practice law before the courts of the State of Illinois and am admitted *pro hac vice* in this Litigation. I am a senior associate at ALG and serve as counsel of record for Plaintiffs in the Litigation.

---

[1] Unless otherwise indicated, capitalized terms herein refer to and have the same meaning as in the Settlement Agreement.

3.      Throughout this litigation, we and our law firm have been responsible for the investigation into and prosecution of Plaintiffs' claims on behalf of the proposed Settlement Class.

4.      We make this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. Except where otherwise stated, we each have personal knowledge of the facts set forth in this Declaration based on active participation in all aspects of the investigation, preparation, prosecution and resolution of the Litigation. If called upon to testify, we each could and would testify competently to the truth of the matters stated herein.

5.      Filed concurrently herewith as **Exhibit 1** is a true and correct copy of the Class Action Settlement Agreement entered into by Plaintiffs, on behalf of themselves and the proposed Settlement Class, and Defendant. The following exhibits are attached to the Settlement Agreement:

- **Exhibit A**: Long Form Notice

- **Exhibit B:** Short Form/Email Notice

- **Exhibit C**: Claim Form

- **Exhibit D**: Proposed Preliminary Approval Order

- **Exhibit E**: Declaration of Frank Ballard of Kroll Settlement Administration LLC.

### Background & Procedural History

6.      On October 27, 2023, Plaintiffs commenced a class action lawsuit by filing a complaint, captioned *Cooper, et al., v. Mount Sinai Health System, Inc.*, in the United States District Court for the Southern District of New York, alleging that their personal health information was collected and shared with Facebook through Mount Sinai's implementation of the Facebook Pixel and Conversions Application Programming Interface (CAPI) on its Web Properties. *See* ECF No. 1.

7.       On January 12, 2024, Plaintiffs filed a first amended class action complaint, which asserted ten claims against Mount Sinai under federal and New York state law: (1) violation of the federal Electronic Communications Privacy Act ("ECPA") for an alleged unauthorized interception, use, and disclosure; (2) violation of the New York Deceptive Trade Practices; (3) negligence; (4) invasion of privacy; (5) breach of implied contract; (6) breach of fiduciary duty; (7) unjust enrichment; (8) breach of confidence; (9) constructive bailment and (10) breach of implied covenant of good faith and fair dealing. *See* ECF No. 16.

8.       On January 26, 2024, Mount Sinai moved to dismiss Plaintiffs' amended complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* ECF Nos. 18-19. On February 9, 2024, Plaintiffs filed their memorandum of law in opposition to Mount Sinai's motion to dismiss. *See* ECF No. 20. On February 16, 2024, Mount Sinai filed its reply to the motion to dismiss. *See* ECF No. 21.

9.       On July 30, 2024, the Court granted in part and denied in part Mount Sinai's Rule 12(b)(6) motion to dismiss, including denying the motion as to Plaintiffs' claim under the ECPA, the New York Deceptive Trade Practices Act, negligence, invasion of privacy, breach of implied contract, breach of fiduciary duty, breach of confidence, constructive bailment, and breach of implied covenant of good faith and fair dealing. *See* ECF No. 28.

10.      On August 20, 2024, Mount Sinai moved under 28 U.S.C. § 1292(b) to certify Judge Engelmayer's decision on the ECPA's tortious or criminal conduct exception to the United States Court of Appeal for the Second Circuit for immediate appellate review. *See* ECF Nos. 32-33. On September 3, 2024, Plaintiffs opposed Mount Sinai's motion for leave to file an interlocutory appeal. *See* ECF No. 39.

11.     On September 6, 2024, the Court denied Mount Sinai's motion for leave to file an interlocutory appeal without prejudice. *See* ECF No. 41.

12.     On September 11, 2024, the Court entered a scheduling order for depositions and fact discovery, after which the Parties would provide the Court with their respective positions on class certification and summary judgment briefing. *See* ECF No. 43.

13.     From September 2024 to March 2025, the Parties propounded and responded to formal discovery, including bi-weekly and often times weekly meet and confer telephonic conferences.

14.     The Parties also conducted numerous additional conferences and exchanged information so that each side could better understand the nature and extent of the use of tracking technologies, potential merits and defenses and the potential damages that Defendant could face if Plaintiffs were successful in litigation.

15.     During discovery, the Parties agreed that mediation with an experienced mediator could be helpful in attempting to reach a resolution of the matter.

16.     The Parties engaged in a full-day mediation before Mr. Bruce A. Friedman, Esq. of JAMS in Los Angeles on March 31, 2025.

17.     The mediation on March 31, 2025 did not result in resolution so the Parties continued settlement discussion with and without the assistance of Mr. Friedman.

18.     As a result of those efforts, the Parties, on April 3, 2025, reached a settlement in principle to resolve the Litigation on a class-wide basis.

**Plaintiffs' and Class Counsel's Role in Prosecuting & Settling this Litigation**

19.    Plaintiffs and their Counsel zealously represented the interests of the proposed Settlement Class and committed substantial resources to the resolution of the Settlement Class's claims.

20.    Before filing the Complaint, Counsel undertook a robust forensic investigation into the factual issues raised in this Litigation including, but not limited to, examining Defendant's source code. Counsel also researched the applicable law to determine how the privacy claims applied to these facts and to anticipate and to address Defendant's potential defenses.

21.    After filing the Complaint, Counsel undertook additional efforts to prosecute Plaintiffs' claims, including holding numerous meet and confers with Defendant's Counsel, additional substantial legal research, amendment of the Complaint, and legal briefing with respect to Defendant's motion to dismiss Plaintiffs' Amended Complaint and its request for interlocutory appeal.

22.    After the Court ruled on Defendant's motion to dismiss, the Parties spent months conducting discovery.

23.    After scheduling mediation, the Parties engaged in substantive pre-mediation conferences, sent informal discovery requests, reviewed Defendant's responses and documents related to the pre-mediation discovery requests and prepared and reviewed detailed mediation statements and other supporting materials outlining their respective legal positions regarding the merits of Plaintiffs' claims, Rule 23 considerations and the scope of damages.

24.    On March 31, 2025, the Parties participated in a day-long mediation before Mr. Friedman. During that mediation, the Parties shared additional information, including via direct communications between counsel in the presence of the mediator, bearing on the merits of

Plaintiffs' claims and the size and nature of the class. Based on the issues surrounding Defendant's use of tracking technologies, the Settlement Class can be identified.

25.    Over the next several weeks, the Parties came to a resolution. Following their agreement on the terms of the Settlement, the Parties continued to discuss the Settlement Agreement and finalized the terms incorporated into the Settlement.

26.    On May 4, 2025, the Parties finalized and executed the proposed Settlement Agreement.

27.    The parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the case, determine the contours of the proposed Settlement Class, analyze the ascertainability of the Settlement Class and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arm's length and with the assistance of a neutral mediator.

28.    Further, Plaintiffs' Counsel have vigorously represented the Class in this Litigation and will continue to do so throughout preliminary and final approval of the Settlement (if approved).

29.    Our efforts on behalf of the proposed Settlement Class include:

i.      conducting a thorough pre-suit investigation, including a review of Defendant's source code and tracking technology.
ii.     gathering Plaintiffs' documents and relevant information;
iii.    preparing a detailed complaint;
iv.     analyzing the legal arguments raised by Defendant;
v.      preparing an amended complaint;
vi.     briefing a motion to dismiss;
vii.    briefing Defendant's request for interlocutory appeal;
viii.   tracking relevant case law and submitting numerous notices of supplemental authority and responses to the same;
ix.     conducting fact discovery through serving and responding to interrogatories, requests for production and requests for admission;
x.      reviewing documents produced in discovery;
xi.     communicating with Plaintiffs to respond to discovery;

xii.    requesting and reviewing relevant informal discovery leading up to and during mediation;

xiii.   obtaining responses to Defendant's informal discovery requests leading up to mediation;

xiv.    preparing mediation statements;

xv.     participating in mediation and extensive subsequent settlement discussions and

xvi.    achieving a very favorable Settlement on behalf of the Settlement Class.

30.     Plaintiffs have been actively engaged in this matter; they provided pertinent information to counsel regarding their use of Defendant's Web Properties and participated in fact discovery. They have remained informed about the Litigation, worked with Class Counsel to prepare and review the complaints and other pleadings and have communicated regularly with counsel throughout the case, up to and including evaluation and approval of the proposed Settlement Class.

### Class Counsel Experience and Expertise

31.     During the course of this Litigation, David S. Almeida and Britany A. Kabakov worked tirelessly to obtain the excellent settlement result proposed here.

32.     David S. Almeida founded ALG, a class action litigation boutique specializing in data privacy and consumer fraud cases. Mr. Almeida's practice focuses on complex class action litigation, primarily litigating privacy cases.

33.     ALG is a nationwide law firm that, since its inception in 2023, has focused not just on litigating complex civil cases, but instead on being leading litigators in each attorney's respective practice area. For instance, Mr. Almeida's current practice area is data privacy protection. In leading this area, he has not only litigated a number of significant class actions brought under the Electronic Communications Privacy Act and patient and consumer privacy Pixel tracking cases, but he also currently represents clients in consumer privacy data breach actions, the California Medical Information Act ("CMIA"), the Illinois Biometric Information and Privacy

Act ("BIPA"), the Video Privacy Protection Act ("VPPA") and the Telephone Consumer Protection Act ("TCPA").

34.     Mr. Almeida's extensive experience spans over 350 class action lawsuits across the country. These cases encompass issues such as data breaches and privacy violations, state consumer fraud and deceptive business practices, false advertising and false labeling, as well as numerous statutory violations.

35.     Britany A. Kabakov, a senior associate at ALG, specializes in data privacy class actions.

36.     Class Counsel are highly experienced in complex class action litigation including data privacy class actions and consumer class actions. Collectively, Class Counsel has secured hundreds of millions of dollars on behalf of consumers.

37.     ALG has the necessary resources to represent the Settlement Class in this Litigation and has committed and will continue to commit the resources required to bring this matter to conclusion. ALG attorneys and staff are proficient in the use of litigation support technology and the firm has invested in the technological resources needed to litigate complex matters. ALG is fully committed to pursuing the best interests of Plaintiffs and the Settlement Class and will devote all the necessary resources to bring this matter to a successful conclusion.

38.     ALG's biography and experience is further detailed in the resume of ALG, attached hereto as **Exhibit 2.**

39.     Counsel for both Parties, as highly experienced trial attorneys and class counsel, are confident in the terms of the Settlement after expending a significant amount of time engaging in informed negotiations.

**Recommendation of Counsel**

40.    Based on thorough examination and investigation of the facts and law relating to Plaintiffs' claims on behalf of the Settlement Class, including the information exchanged during fact discovery and before and during mediation, we believe the proposed Settlement is in the best interest of the Settlement Class.

41.    Our extensive factual and legal investigation, including briefing of a motion to dismiss and request for interlocutory appeal, informed us about the strengths and weaknesses of Plaintiffs' claims as well as Defendant's potential defenses and allowed us to conduct an informed, fair and objective evaluation of the value and risks of continued litigation.

42.    We recognize that despite our belief in the strength of Plaintiffs' Claims and Plaintiffs' and the proposed Class's ability to secure a judgment and award of damages, the expense, duration and complexity of protracted litigation would be substantial and the outcome uncertain.

43.    We also are mindful that absent the proposed Settlement, Defendant's defenses could deprive the Plaintiffs and the proposed Settlement Class of any potential relief whatsoever. Defendant would continue to challenge liability, would oppose class certification vigorously and would prepare a competent defense at trial. Defendant also could appeal any adverse decision on the merits or challenge the award of statutory damages.

44.    In our professional and informed opinion, the relief provided by the proposed Settlement is fair, adequate, reasonable and in the best interests of the Settlement Class, and we respectfully recommend it to the Court for its preliminary approval. Plaintiffs' Counsel have conferred with Plaintiffs, who also supports the proposed Settlement.

**Settlement Administrator & Notice Program**

45.     We selected Kroll, LLC ("Kroll") based in part on its experience in similar class actions and a notice plan proposal that includes innovative, thoughtful and technologically sophisticated means of providing notice to Settlement Class Members, at a reasonable cost. *See* Declaration of Frank Ballard of Kroll Settlement Administration LLC, attached hereto as **Exhibit E.**

46.     To ensure that we obtained the best value for the Settlement Class, we received proposals from a total of three claims administration companies. Kroll had the strongest proposal.

47.     While the eventual cost of administering the Settlement will depend on a variety of factors, including the number of claims submitted by Settlement Class Members, Kroll estimates the cost of administration at approximately $150,300.00.

48.     In its role, Kroll will oversee the Notice Program. The Notice Program is designed to provide the best notice practicable and is tailored to take advantage of the information Defendant has about the Settlement Class.

49.     It is also our opinion, based on our collective experience, that the Claim Form, Short Form Notice, and Long Form Notice, accurately and plainly explain the Settlement Benefits and how to obtain them, offer a clear opportunity for members of the Settlement Class to exclude themselves if they so choose, and provide a mechanism for the Settlement Class to share their opinions about the settlement with the Court.

50.     It is Class Counsels' opinion that the Notice Plan here provides the best notice practicable.

We declare under penalty of perjury of the law of the United States that the foregoing is true and correct.

Executed on this 5th day of May, 2025.

By:        */s/ David S. Almeida*              */s/ Britany A. Kabakov*
           David S. Almeida                  Britany A. Kabakov