# IN THE UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RONDA COOPER, CORAL FRASER and GILBERT MANDA, *on behalf of themselves and all others similarly situated*,<br><br>      Plaintiffs,<br><br>v.<br><br>MOUNT SINAI HEALTH SYSTEM,<br><br>      Defendant. | Case No. 1:23-cv-09485-PAE<br><br>The Honorable Paul A. Engelmayer, United States District Judge |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SERVICE AWARDS, ATTORNEYS' FEES AWARD AND <u>ATTORNEYS' COSTS AND EXPENSES</u>

David S. Almeida
Britany A. Kabakov
**ALMEIDA LAW GROUP LLC**
879 W. Webster Avenue
Chicago, IL 60614
Tel.: (708) 437-6476
david@almeidalawgroup.com
britany@almeidalawgroup.com

James J. Bilsborrow
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
Tel.: (212) 558-5500
jbilsborrow@weitzlux.com

*Counsel for Plaintiffs & the Settlement Class*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

SUMMARY OF THE SETTLEMENT .............................................................................. 4

    1.        The Settlement Class.................................................................................... 4

    2.        The Settlement Benefits. .............................................................................. 4

    3.        The Release. ................................................................................................. 5

    4.        The Costs of Notice and Claims Administration. ........................................ 5

    5.        Attorneys' Fees and Expenses. .................................................................... 6

    6.        Service Awards to Named Plaintiffs............................................................ 6

    7.        Preliminary Approval, Notice, and Claims.................................................. 7

ARGUMENT....................................................................................................................... 7

    I.        The Percentage Method Should Be Used To Calculate Fees. ..................... 8

    II.      The Requested Attorneys' Fees Are Eminently Reasonable. ...................... 10

        A. Class Counsel Expended Significant Time and Labor. ................................ 10

        B. The Magnitude and Complexity of the Litigation. ...................................... 12

        C. The Risks of Litigation Support an Award of Attorneys' Fees. ................... 13

        D. Class Counsel Provided High Quality Representation & the Requested Fee
        Favors Granting the Requested Fee Award. .................................................. 14

        E. Public Policy Weighs in Favor of Granting the Requested Fee Award.......... 16

        F. Class Counsel's Fee Request is Reasonable Under a Lodestar Cross-Check. 16

    III.     Class Counsel's Request for Costs and Expenses Should be Approved. ....... 18

    IV.     Plaintiffs' Requested Service Awards Should be Approved. ......................... 19

CONCLUSION.................................................................................................................... 20

**TABLE OF AUTHORITIES**

*Page(s)*

*Cases*

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
522 F.3d 182 (2d Cir. 2007) ............................................................................................ 17

*Baffa v. Donaldson Lufkin & Jenrette Sec. Corp.*,
2002 WL 1315603 (S.D.N.Y. June 17, 2002) .................................................................... 9

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ..................................................................................... 20

*City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*,
2020 WL 7413926 (S.D.N.Y. Dec. 17, 2020) ................................................................... 9

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
2021 WL 2453972 (S.D.N.Y. June 15, 2021) .................................................................. 18

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) ........................................................................... 18

*Dornberger v. Metro. Life Ins. Co.*,
203 F.R.D. 118 (S.D.N.Y. 2001) ..................................................................................... 20

*Espinal v. Victor's Cafe 52nd St., Inc.*,
2019 WL 5425475 (S.D.N.Y. Oct. 23, 2019) .................................................................. 10

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
62 F.4th 704 (2d Cir. 2023) .............................................................................................. 8

*Fleisher v. Phoenix Life Ins. Co.*,
2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ................................................................. 19

*Frasco v. Flo Health, Inc.*,
2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) ................................................................ 13

*Gierlinger v. Gleason*,
160 F.3d 858 (2d Cir. 1998) ............................................................................................ 17

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ........................................................................................ passim

*Grissom v. Sterling Infosystems, Inc.*,
2025 WL 1348480 (S.D.N.Y. May 8, 2025) ...................................................................... 8

*Gruber v. Gilbertson*,
   647 F. Supp. 3d 100 (S.D.N.Y. 2022)..........................................................................8

*Guippone v. BH S & B Holdings, LLC*,
   2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ...........................................................12

*Hart v. BHH, LLC*,
   2020 WL 5645984 (S.D.N.Y. Sept. 22, 2020)..........................................................15

*Hart v. RCI Hosp. Holdings, Inc.*,
   2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015)............................................................9

*Hernandez v. Between the Bread 55th Inc.*,
   2021 WL 12279220 (S.D.N.Y. Aug. 16, 2021) ........................................................15

*In re Advoc. Aurora Health Pixel Litig.*,
   740 F. Supp. 3d 736 (E.D. Wis. 2024).....................................................................14

*In re Beacon Assocs. Litig.*,
   2013 WL 2450960 (S.D.N.Y. May 9, 2013)................................................................9

*In re BioScrip, Inc. Sec. Litig.*,
   273 F. Supp. 3d 474 (S.D.N.Y 2017)........................................................................14

*In re Citigroup Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013)...................................................................9, 18

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) .............................................................9

*In re Gen. Motors LLC Ignition Switch Litig.*,
   2020 WL 7481292 (S.D.N.Y. Dec. 18, 2020)...........................................................19

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................................8

*In re Grab Holdings Ltd. Sec. Litig.*,
   2025 WL 1413515 (S.D.N.Y. May 15, 2025)..............................................................8

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,
   2022 WL 2063864 (S.D.N.Y. June 8, 2022)..............................................................16

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ..............................................................................13

*In re Namenda Direct Purchaser Antitrust Litig.*,

462 F. Supp. 3d 307 (S.D.N.Y. 2020) ................................................................. 15

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,

187 F.R.D. 465 (S.D.N.Y. 1998) ......................................................................... 12

*In re Novant Health, Inc.*,

2024 WL 3028443 (M.D.N.C. June 17, 2024) ............................................... 12, 13

*Lokman v. Azure Power Glob. Ltd.*,

2025 WL 2627124 (S.D.N.Y. Sept. 8, 2025) ........................................................ 8

*Marin v. 310 Bowery Grp. LLC*,

2025 WL 2267785 (S.D.N.Y. Aug. 8, 2025) ....................................................... 18

*McDaniel v. Cnty. of Schenectady*,

595 F.3d 411 (2d Cir. 2010) .............................................................................. 8, 9

*Meredith Corp. v. SESAC, LLC*,

87 F. Supp. 3d 650 (S.D.N.Y. 2015) .................................................................. 18

*Montalvo v. Flywheel Sports, Inc.*,

2018 WL 7825362 (S.D.N.Y. July 27, 2018) ................................................... 8, 20

*Nichols v. Noom, Inc.*,

2022 WL 2705354 (S.D.N.Y. July 12, 2022) ..................................................... 15

*Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*,

2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ........................................................ 17

*Pearlstein v. BlackBerry Ltd.*,

2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ................................................... 18

*Restrepo v. Monte's Trattoria, Ltd.*,

2025 WL 753953 (S.D.N.Y. Mar. 7, 2025) .......................................................... 8

*River Light V, L.P. v. Lin & J Int'l, Inc.*,

2015 WL 3916271 (S.D.N.Y. June 25, 2015) .................................................... 19

*Shapiro v. JPMorgan Chase & Co.*,

2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................................... 16

*Sweat v. Houston Methodist Hosp.*,

2025 WL 2697111 (S.D. Tex. Sept. 22, 2025) ................................................... 13

*Sykes v. Harris*,

   2016 WL 3030156 (S.D.N.Y. May 24, 2016)..........................................................................13

*Wynne v. City of New York*,

   2024 WL 5049770 (S.D.N.Y. Dec. 10, 2024)......................................................................18

Rules

Federal Rule of Civil Procedure 23(h)...............................................................................2, 8, 18

v

Plaintiffs Ronda Cooper, Coral Fraser, and Gilbert Manda (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through undersigned counsel, respectfully submit this Memorandum of Law in Support of their Motion for Service Awards, Attorneys' Fees Award and Attorneys' Costs and Expenses.[1]

## INTRODUCTION

If finally approved by this Court, this class action settlement between Plaintiffs and Defendant ("Mount Sinai" or "Defendant" and collectively with Plaintiffs, the "Parties"), will fully resolve Plaintiffs' and the Class's claims that Mount Sinai collected their personal health information and personally identifiable information and shared it with Meta Platforms, Inc. dba Facebook ("Facebook") through Mount Sinai's use of the Facebook Pixel and Conversions Application Programming Interface on its public website, www.mountsinai.org ("Website"), and an Epic MyChart patient portal, https://mychart.mountsinai.org/ ("Patient Portal," collectively with the Website, the "Web Properties").

On May 5, 2025, Plaintiffs presented their Settlement with Mount Sinai to the Court by their Motion for Preliminary Approval. *See* Dkt. No. 60.[2] The Court held a Preliminary Approval Hearing on June 11, 2025, and granted preliminary approval of the Settlement on June 16, 2025 (the "Preliminary Approval Order"). *See* Dkt. Nos. 61 & 65.  If finally approved, the Settlement will provide pro rata cash payments to Settlement Class Members from a $5,256,588.00 non-reversionary fund to benefit approximately 1,314,147 individuals. Throughout the pendency of the

---

[1] Unless otherwise indicated, capitalized terms herein have the same meaning as in the Settlement Agreement ("Settlement Agreement" or "SA"). *See* Dkt. No. 64-1.

[2] On May 30, 2025, in response to the Court's order, Plaintiffs refiled their Unopposed Motion for Preliminary Approval of Settlement with all supporting documents filed separately. *See* Dkt. Nos. 62-64. References to Plaintiffs' Memorandum of Law in Support of Motion for Settlement refer to Dkt. No. 63 herein ("Preliminary Approval Motion").

case, Mount Sinai has disputed and continues to dispute the merits of Plaintiffs' claims. Forgoing years of potentially protracted litigation and instead receiving monetary remuneration in the near term is an excellent result for Settlement Class Members.

Pursuant to Federal Rule of Civil Procedure 23(h), Plaintiffs and Class Counsel respectfully request that the Court approve: (i) an Attorneys' Fees Award in the amount of $1,666,194.80, representing one-third of the Net Settlement Fund (subtracting Claims Administration Costs and Attorneys' Costs and Expenses); (ii) reimbursement of Attorneys' Costs and Expenses in the amount of $16,403.60 and (iii) Service Awards of $2,500 for each named Plaintiff, totaling $7,500, in recognition of their service as Class Representatives. The requested awards are fair, reasonable, and consistent with Second Circuit precedent as well as this Court's directive that attorneys' fees should be allocated from the Net Settlement Fund, not the Settlement Fund. The requested attorneys' fees are comparable to awards approved in similar class action settlements and reflect the market rate for legal services, taking into account the substantial risks, burdens, and opportunity costs inherent in contingent-fee litigation. Class Counsel's requests are supported by the significant time and effort expended in investigating, prosecuting, and settling the claims alleged, and the excellent benefits conferred to the Class.

Plaintiffs and Class Counsel respectfully request that this Honorable Court approve the requested Attorneys' Fees Award, Attorneys' Costs and Expenses, and Service Awards.

### BACKGROUND[3]

Mount Sinai owns and operates eight hospitals and more than a dozen medical centers in the New York City area. *See* Dkt. No. 49, Second Amended Complaint ("SAC"), ¶ 1. As part of

---

[3] A more detailed summary of the relevant background and procedural history of this Litigation is set forth in Plaintiffs' Preliminary Approval Motion as well as the Court's Preliminary Approval Order, which Plaintiffs incorporate herein by reference. *See* Dkt. Nos. 63 & 65.

the medical services it provides, Mount Sinai owns, controls and maintains a website, https://www.mountsinai.org/ (the "Website"). *Id.* ¶ 3. Mount Sinai also controls and maintains a web-based patient portal (the "Portal", collectively with the Website, the "Web Properties"). *Id.* Plaintiffs allege Mount Sinai collected and shared their personal health information and personally identifiable information with Facebook through Mount Sinai's use of the Meta Pixel on its Web Properties. *See generally* SAC.

Briefing on Defendant's motion to dismiss concluded in February 2024. *See* Dkt. No. 21. On July 30, 2024, the Court granted in part and denied in part Mount Sinai's Rule 12(b)(6) motion. *See* Dkt. No. 28. On August 20, 2024, Mount Sinai sought certification for immediate appellate review of the Court's decision on the federal Wiretap Act's tortious or criminal conduct exception, which the Court denied without prejudice on September 6, 2024. *See* Dkt. Nos. 32-33 & 41.

From September 2024 to March 2025, the Parties propounded and responded to formal discovery. *See* Declaration of Almeida Law Group LLC in Support of Service Awards, Attorneys' Fees Award and Attorneys' Costs and Expenses ("Almeida Decl.") ¶¶ 16-22, submitted herewith. The Parties engaged in frequent communications to exchange information so that each side could better understand the nature and extent of the use of tracking technologies on Mount Sinai's Web Properties as well as potential claims and defenses and the scope of damages. *Id.* In the midst of ongoing fact discovery, the Parties agreed to pursue mediation. *Id.* ¶ 22.

After exchanging pre-mediation information regarding, among other things, the size and scope of a potential settlement class and submitting detailed mediation statements setting forth their respective positions, the Parties engaged in a full-day mediation before Mr. Bruce A. Friedman, Esq. of JAMS in Los Angeles on March 31, 2025. *Id.* ¶¶ 23-26. Although the mediation did not result in resolution, the Parties continued settlement discussions. *Id.* ¶ 28. Those efforts

were ultimately successful, resulting in a settlement in principle reached on April 3, 2025. *Id.* ¶ 29. On April 4, 2025, the Parties notified the Court of their Settlement. *See* Dkt. No. 58. Thereafter, the Parties negotiated the terms of the Settlement Agreement and its exhibits before executing the Agreement on May 5, 2025. Almeida Decl. ¶¶ 30-31. After a hearing on June 11, 2025, the Court granted Preliminary Approval on June 16, 2025. *See* Dkt. Nos. 61 & 65.

**SUMMARY OF THE SETTLEMENT**

The proposed Settlement provides for agreed certification of a Settlement Class, notice, and cash payments to Settlement Class Members.

**1.    The Settlement Class.**

The Settlement provides for certification of a Settlement Class, defined as "[a]ll Mount Sinai MyChart account holders who logged into their MyChart accounts through https://mychart.mountsinai.org/ between October 27, 2020 and October 27, 2023." SA, ¶ 1.40. The Settlement Class consists of approximately 1,314,147 individuals. *Id.*[4]

**2.    The Settlement Benefits.**

The Settlement provides Class Members with timely and tangible benefits targeted at remediating the specific harms they contend they have suffered because of Mount Sinai's use of tracking technologies. All Settlement Class Members are eligible to receive monetary benefits from the $5,256,588.00 Settlement Fund, which will be funded by Defendant. *See* SA, ¶ 2.1. The Settlement Fund will be used to pay: (i) reasonable Cost of Claims Administration, (ii) Attorneys' Costs and Expenses approved by the Court; (iii) Attorneys' Fees Award approved by the Court;

---

[4] The Settlement Class excludes: (a) officers and directors of Defendant, its agents, affiliates, subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or the Released Persons have a controlling interest; (b) all Settlement Class Members who timely and validly exclude themselves from the Settlement Class; (c) the Judge assigned to evaluate the fairness of this Settlement and their immediate family members and staff; and (d) Class Counsel. SA, ¶ 1.40.

(iv) Service Awards approved by the Court; (v) benefits to Settlement Class Members, as distributed pursuant to the terms and conditions of the Agreement; and (vi) any *cy pres* distribution approved by the Court. *Id.* ¶ 2.6. Settlement Class Members who submit valid Claim Forms will receive a pro rata cash distribution from the monies remaining in the Net Settlement Fund after the payment of any Attorneys' Fee Award and Service Award. *See id.* ¶ 3.5.

**3.    The Release.**

In exchange for the consideration from Mount Sinai and in accord with Section VII of the Settlement Agreement, Plaintiffs and Settlement Class Members agree to release Mount Sinai and all affiliated entities from all past, present and future claims and causes of action asserted or that could have been asserted, or that arise out of or are connected to the Litigation. SA, ¶ 7.2. This includes the release of Unknown Claims that could have been raised in the Litigation. *Id.* ¶ 7.3. The Released Claims will be dismissed with prejudice upon final approval. *Id.* ¶ 7.1.

**4.    The Costs of Notice and Claims Administration.**

As part of the Settlement, Mount Sinai has agreed to pay the costs and expenses incurred through Claims Administration including, but not limited to, the costs of providing notice to the Settlement Class Members with such costs to come out of the Settlement Fund. SA, ¶ 3.1. The Settlement Administrator, Kroll, has agreed to cap its Claims Administration Costs at $241,600. *See* Almeida Decl. ¶ 50. As will be detailed in the upcoming Final Approval Motion, Class Counsel supervised the Settlement Administrator as they, among other things, developed the notice plan, distributed notice by email and mail, developed the Settlement Website, and responded to Class Member inquiries. *Id.* ¶¶ 46-47.

5.      **Attorneys' Fees and Expenses.**

Further to the Settlement Agreement, Class Counsel may request an Attorneys' Fee Award not to exceed 35% of the Settlement Fund as well as Attorneys' Costs and Expenses incurred in prosecuting the Litigation. SA, ¶¶ 8.1-8.2. Class Counsel now seek an Attorneys' Fee Award of $1,666,194.80, representing one-third of the Net Settlement Fund, calculated as $5,256,588.00 (the Settlement Fund) minus $16,403.60 (Attorneys' Costs and Expenses) minus $241,600 (capped Claims Administration Costs) divided by three.

The Parties did not discuss or agree upon payment of attorneys' fees and expenses until after they agreed on all material terms of relief to the Class. *Id.* ¶¶ 8.1-8.2; *see also* Almeida Decl. ¶¶ 51 & 57. The long form notice informed Class Members that Class Counsel would seek attorneys' fees of up to 35% of the Settlement Fund ($1,839,805.80) as well as reasonable litigation costs and expenses. *See* Almeida Decl. ¶ 59. Settlement Class Members had the opportunity to review and comment on this request, and to date, no Class Member has objected. *Id.* ¶ 44.

6.      **Service Awards to Named Plaintiffs.**

The Settlement Agreement permits Named Plaintiffs to request Service Awards of $2,500 each in recognition of their efforts and commitment on behalf of the Settlement Class. SA, ¶ 8.3. The Parties did not discuss or agree upon payment of Service Awards until after they agreed on all material terms of relief to the Settlement Class. *Id.*; *see also* Almeida Decl. ¶ 51. The long form notice informed Class Members that Named Plaintiffs would seek Service Awards in this amount. *Id.* ¶ 54. Settlement Class Members had the opportunity to review and to comment on the Service Awards Named Plaintiffs intended to request, and to date, no Class Member has objected. *Id.*

Each Named Plaintiff contributed significantly to the prosecution and resolution of this Litigation, including by: (i) assisting Class Counsel with initial case investigation, such as by

6

participating in client interviews; (ii) providing supporting documentation and personal information to assist in the prosecution of the case, including during discovery; (iii) reviewing and approving the initial complaint and amended complaints; (iv) remaining available during settlement negotiations and reviewing and approving the Settlement Agreement. *See* Almeida Decl. ¶¶ 38-40 & 51-53. Service Awards in the amount of $2,500 each appropriately recognize the time, effort, and expense incurred to benefit all Settlement Class Members.

### 7.  Preliminary Approval, Notice, and Claims.

This Court granted Plaintiffs' Preliminary Approval Motion on June 16, 2025, certifying a nationwide class for settlement purposes and directing that notice be sent to Settlement Class Members. *See* Dkt. No. 65. The Preliminary Approval Order established procedures by which any Settlement Class Member could submit a Claim Form, opt out of the Settlement, or object to it. *Id.*

The deadline to submit a claim, object, or opt out of the Settlement is October 14, 2025. *See* Almeida Decl. ¶ 43. To date, the reaction of the Class has been overwhelmingly positive. As of September 26, 2025, the Settlement Administrator has received 37,312 Claim Forms (i.e., a 2.84% claim rate), no Class Members have objected to the Settlement, and only 12 Class Members have opted out. *Id.* ¶¶ 42-44.[5] Once filed, this Motion will be posted on the Settlement Website to allow Class Members to assess the fees actually requested in this Litigation.

### ARGUMENT

The Court having granted Preliminary Approval and the Notice Program ongoing, this Motion requests attorneys' fees and costs to Class Counsel and Service Awards for the Class Representatives.

---

[5] As claims, opt outs, and objections are still being submitted, the Settlement Administrator will provide its declaration with final numbers as part of Plaintiffs' upcoming Motion for Final Approval.

7

## I.    THE PERCENTAGE METHOD SHOULD BE USED TO CALCULATE FEES.

Although courts in this Circuit routinely approve fee requests for one-third of a settlement fund,[6] this Court has recognized that "the fee award should be calculated as a percentage of the settlement fund net of costs." *Montalvo v. Flywheel Sports, Inc.*, 2018 WL 7825362, at *6 (S.D.N.Y. July 27, 2018); *see also In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011). In compliance with this Court's directive, Class Counsel seeks an Attorneys' Fees Award in the amount of $1,666,194.80, representing one-third of the Net Settlement Fund (subtracting Claims Administration Costs and Attorneys' Costs and Expenses). Class Counsel also seeks litigation costs and expenses of $16,403.60. These proposed fees and expenses will be deducted from the Settlement Fund.

Federal Rule of Civil Procedure 23(h) authorizes courts to award "reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). There are two primary methods of calculating attorneys' fees: (i) the "percentage of the fund" and (ii) the "lodestar" method. *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 723 (2d Cir. 2023). In a class action, a district court has the discretion to choose either the lodestar or percentage-of-fund method. *Id.*; *see also McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) (holding that "the decision as to the appropriate method [is left] to 'the district court, which is intimately familiar with the nuances of the case'") (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48 (2d Cir. 2000)).

---

[6] *See, e.g., Lokman v. Azure Power Glob. Ltd.*, 2025 WL 2627124, at *4 (S.D.N.Y. Sept. 8, 2025) (awarding "fees to Lead Counsel in the amount of 33 1/3 % of the Settlement Amount"); *Gruber v. Gilbertson*, 647 F. Supp. 3d 100, 127 (S.D.N.Y. 2022) (awarding one-third of $4.649 million settlement fund); *In re Grab Holdings Ltd. Sec. Litig.*, 2025 WL 1413515, at *5 (S.D.N.Y. May 15, 2025) (same); *Grissom v. Sterling Infosystems, Inc.*, 2025 WL 1348480, at *1 (S.D.N.Y. May 8, 2025) (same for damages class); *Restrepo v. Monte's Trattoria, Ltd.*, 2025 WL 753953, at *3 (S.D.N.Y. Mar. 7, 2025) ("Courts in this Circuit typically approve attorneys' fees that range between 30% and 33%.").

Courts in this Circuit favor the percentage of the fund method in cases—such as this one—where a common fund exists. *See, e.g.*, *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388 (S.D.N.Y. 2013) (explaining that the "trend" of using the percentage of the fund method to compensate class counsel is "firmly entrenched in the jurisprudence of this Circuit."); *Hart v. RCI Hosp. Holdings, Inc.*, 2015 WL 5577713, at *13 (S.D.N.Y. Sept. 22, 2015) (similar); *In re Beacon Assocs. Litig.*, 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013) (collecting cases).

The percentage approach has the "advantage of aligning the interests of plaintiffs and their attorneys more fully by allowing the latter to share in both the upside and downside risk of litigation." *McDaniel*, 595 F.3d at 419; *see also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("From a public policy perspective, the percentage method is the most efficient means of compensating the work of class action attorneys. It does not waste judicial resources analyzing thousands of hours of work, where counsel obtained a superior result.").

In contrast, the lodestar approach "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in gimlet-eyed review of line-item fee audits." *Baffa v. Donaldson Lufkin & Jenrette Sec. Corp.*, 2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002) (cleaned up); *see also City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, 2020 WL 7413926, at *2 (S.D.N.Y. Dec. 17, 2020) (explaining same & using percentage method with lodestar as a cross-check). For these reasons, the Court should follow the well-settled practice in this Circuit and apply the percentage-of-the-fund method to award fees and expenses here.

**II.      THE REQUESTED ATTORNEYS' FEES ARE EMINENTLY REASONABLE.**

The Second Circuit has articulated six factors to be used to determine the reasonableness of a common fund fee: (i) time and labor expended by counsel; (ii) magnitude and complexities of the litigation; (iii) risks of the litigation; (iv) quality of representation; (v) the requested fee in relation to the settlement and (vi) public policy considerations. *See Goldberger*, 209 F.3d at 50; s*ee also Espinal v. Victor's Cafe 52nd St., Inc.*, 2019 WL 5425475, at *2 (S.D.N.Y. Oct. 23, 2019). As detailed below, the *Goldberger* factors support approval of Class Counsel's fee application.

**A.      Class Counsel Expended Significant Time and Labor.**

The first *Goldberger* factor—the time and labor expended by counsel—supports approval of the requested fee. Since first investigating and evaluating Plaintiffs' claims, Class Counsel has devoted significant effort, time, and resources to achieve the $5,256,588.00 Settlement with Mount Sinai for the benefit of approximately 1,314,147 Class Members. This Settlement was secured only after contested litigation, including Rule 12 motion practice and amendment of the complaint, which resulted in the Court's partial denial of Defendant's motion to dismiss, as well as briefing on Defendant's Motion for Leave to Appeal. *See* Almeida Decl. ¶¶ 6-15.

Following the Court's rulings, the Parties negotiated a case management plan, which the Court approved. *Id.* ¶ 16. From September 2024 to March 2025, the Parties negotiated a protective order and ESI protocol and propounded and responded to discovery, including bi-weekly and often weekly meet and confer telephonic conferences. *Id.* ¶¶ 16-18. Class Counsel also met with Plaintiffs to collect additional information and documents and prepare responses to discovery requests. *Id.* ¶ 19. And Class Counsel worked with a consulting expert to prepare additional discovery. *Id.* ¶ 20.

During discovery, the Parties agreed that mediation with an experienced mediator could be helpful in attempting to reach a resolution of the matter. *Id.* ¶ 22. Toward this end, the Parties engaged in a full-day mediation before Mr. Bruce A. Friedman, Esq. of JAMS in Los Angeles on March 31, 2025. *Id.* ¶ 26. In preparation for the mediation, the Parties exchanged targeted pre-mediation information, bearing on the merits of Plaintiffs' claims and the size and nature of the class and prepared and analyzed mediation statements. *Id.* ¶ 23. Although the mediation did not result in resolution, the Parties continued settlement discussions. *Id.* ¶ 28. The Parties, on April 3, 2025, reached a settlement in principle to resolve the Litigation on a class-wide basis. *Id.* ¶ 29.

The Parties requested and reviewed competitive bids from numerous notice and administration companies before selecting Kroll. *Id.* ¶ 32. The Parties then worked with Kroll to draft and revise the short form notice, long form notice, Claims Form as well as the content on the Settlement Website. *Id.* ¶ 33. Following the settlement in principle, the Parties negotiated the terms of the Settlement and its accompanying exhibits, which were executed on May 4, 2025. *Id.* ¶ 30. During the process of finalizing the Settlement, Class Counsel drafted the Motion for Preliminary Approval, which was filed on May 5, 2025. *Id.* ¶ 31. The Court held an in-person Preliminary Approval Hearing on June 11, 2025, which Class Counsel prepared for and attended. *Id.* ¶ 34.

Notably, Class Counsel's work is ongoing as much work remains to be done in this case. Specifically, Class Counsel must still draft the Motion for Final Approval and prepare for and appear at the Final Approval Hearing. *Id.* ¶¶ 48-49. Class Counsel will also continue to engage in efforts on behalf of Settlement Class Members while the settlement administration process continues, including frequent communication with the Settlement Administrator and responding to inquiries from Class Members. *Id.* ¶¶ 36-37. Courts have recognized that Class Counsel's fees are not based solely on the time and effort already expended, but also on time that will be expended

administering the settlement in the future. *See, e.g.*, *Guippone v. BH S & B Holdings, LLC*, 2011 WL 5148650, at *10 (S.D.N.Y. Oct. 28, 2011) ("The requested attorney fee is not based solely on time and effort already expended; rather, it is meant to compensate Class Counsel for all of the time it has spent and will be required to spend taking part in administering the settlement in the future.").

To date, Plaintiffs' Counsel has expended approximately 762.95 hours investigating, litigating, and attempting to resolve this Litigation on behalf of Plaintiffs and Settlement Class Members. *See* Almeida Decl. ¶¶ 60-62 (754.95 hours by Almeida Law Group and 8 hours of work from local counsel). As such, the first *Goldberger* factor supports the reasonableness of Class Counsel's attorneys' fee request.

**B.      The Magnitude and Complexity of the Litigation.**

The Settlement will bring final resolution to approximately 1,314,147 Class Members whose health information was potentially compromised by Mount Sinai's use of tracking technologies. Under the second *Goldberger* factor, the size and difficulty of the issues in a case are significant factors to be considered in assessing a fee award. *See* 209 F.3d at 50; *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) ("There can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result.").

Here, the substantial size of the class and the complexity of the factual and legal questions involved support the reasonableness of the fee award. *See, e.g.*, *In re Novant Health, Inc.*, 2024 WL 3028443, at *10 (M.D.N.C. June 17, 2024) (observing that privacy cases involving application of the Meta pixel involve factual and legal "complexity"). Notably, the Parties litigated a motion to dismiss, which Plaintiffs largely prevailed upon. Dkt. No. 28. Then, Mount Sinai filed a Motion for Leave to Appeal, which resulted in additional briefing. *See* Dkt. Nos. 33 & 39-40. The Parties

also engaged in discovery, which required meet-and-confer conferences, technical evaluation of the tracking technologies at issue, and consultation with experts—with additional expert discovery anticipated if litigation had continued. *See* Almeida Decl. ¶¶ 16-22. Moreover, had this case advanced towards trial, additional motion practice would have prolonged this case, perhaps substantially so. Thus, the second *Goldberger* factor supports the reasonableness of Class Counsel's attorneys' fee request.

## C.    The Risks of Litigation Support an Award of Attorneys' Fees.

Class Counsel litigated this case on a contingent basis in the face of significant risk. The "risk of success is perhaps the foremost factor to be considered in determining the reasonableness of an attorneys' fees request." *Sykes v. Harris*, 2016 WL 3030156, at *16 (S.D.N.Y. May 24, 2016) (cleaned up). This factor recognizes the risk of non-payment in cases prosecuted on a contingency basis where claims are not successful, which can justify higher fees. *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk."). Further, "the risk should be measured at the outset of the case and not at the time of settlement." *Sykes*, 2016 WL 3030156, at *16. The uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award.

Here, the risks were considerable. Class action lawsuits asserting breach of privacy rights are complex and time-consuming. Had litigation continued, Plaintiffs would have faced a series of risks prior to and during trial. Courts in similar cases have highlighted these challenges. *See, e.g.*, *Frasco v. Flo Health, Inc.*, 2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) (granting summary judgment in part in pixel-tracking case); *Sweat v. Houston Methodist Hosp.*, 2025 WL 2697111, at *1 (S.D. Tex. Sept. 22, 2025) (granting summary judgment in pixel-tracking case); *In re Novant*

*Health, Inc.*, 2024 WL 3028443, at *7 (M.D.N.C. June 17, 2024) (granting final approval in healthcare tracking case and explaining "[t]he law surrounding data privacy and the surreptitious sharing of user data is still developing, making it challenging for the parties to evaluate the likelihood of prevailing at trial"); *In re Advoc. Aurora Health Pixel Litig.*, 740 F. Supp. 3d 736, 759 (E.D. Wis. 2024) (same, finding that in Meta Pixel tracking class action "success was far from guaranteed in this case"). This risk was exacerbated by the fact that Mount Sinai retained highly qualified defense counsel. Indeed, Mount Sinai would continue to deny liability, oppose class certification, pursue summary judgment, and, if necessary, take the case through trial and appeal.

Additionally, Class Counsel prosecuted this Litigation without any assurance of payment. *See* Almeida Decl. ¶ 49. Class Counsel has not received any compensation since the inception of this Litigation. *Id.* ¶ 66. Any lawyer undertaking representation of large numbers of affected individuals must be prepared to invest time, energy, and resources—as Class Counsel has done. Courts consider that due to the contingent nature of the customary fee arrangement, lawyers make this investment with the possibility of an unsuccessful outcome. *See, e.g.*, *In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 501 (S.D.N.Y 2017) (noting that the contingency risk analysis "weigh[ed] in favor of a large award" where lead counsel "worked for two years without compensation on a contingency fee basis"). Class Counsel stood to gain nothing if the Litigation was unsuccessful, despite having advanced costs and expenses for nearly two years. As such, the risks in this Litigation support Class Counsel's requested attorneys' fees.

**D.      Class Counsel Provided High Quality Representation & the Requested Fee Favors Granting the Requested Fee Award.**

Class Counsel efficiently and effectively represented Plaintiffs and Settlement Class Members to achieve significant Settlement benefits for more than a million Class Members. "To determine the quality of the representation, courts review, among other things, the recovery

obtained and the backgrounds of the lawyers involved in the lawsuit." *Hernandez v. Between the Bread 55th Inc.*, 2021 WL 12279220, at \*4 (S.D.N.Y. Aug. 16, 2021) (cleaned up).

First, the $5,256,588.00 Settlement represents a tremendous value to Class Members given the attendant risks of continued litigation. Assessing whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 315 (S.D.N.Y. 2020) (quotation omitted). Instead, the range of reasonableness recognizes "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id*. (quotation omitted). In addition to considering the recovery obtained, courts consider the requested fee in relation to the settlement amount. Class Counsel's requested fee of $1,666,194.80, representing one-third of the Net Settlement Fund (subtracting Claims Administration Costs and Attorneys' Costs and Expenses), is commensurate with other settlements in this Court and throughout this circuit. *See, e.g.*, *Nichols v. Noom, Inc.*, 2022 WL 2705354, at \*10 (S.D.N.Y. July 12, 2022) (collecting cases awarding attorneys' fees of one-third or more).

Second, the Settlement is the product of skilled and experienced advocacy. Class Counsel are experienced in data privacy, technology tracking, and class action litigation. *See* Almeida Decl. ¶ 56. Class Counsel conducted extensive pre-suit investigation, vetted potential plaintiffs; drafted the initial complaint and amended complaints; exercised diligence and care in developing the claims, and vigorously litigated the matter from the outset. *See, e.g.*, *id*. ¶¶ 6-15. It was Class Counsel's skill and experience that were directly responsible for the favorable Settlement.

In short, Class Members received high quality representation and therefore the fourth and fifth *Goldberger* factors support the requested fee award. *See, e.g.*, *Hart v. BHH, LLC*, 2020 WL

5645984, at *11 (S.D.N.Y. Sept. 22, 2020) (finding that where there is "an advantageous settlement for the class" that class counsel's "work deserves to be commended").

### E.    Public Policy Weighs in Favor of Granting the Requested Fee Award.

The final *Goldberger* factor—public policy—also weighs in favor of granting Class Counsel's requested fees. "Skilled counsel must be incentivized to pursue complex and risky claims." *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24, 2014). Reasonable fee awards must be provided to ensure that attorneys are incentivized to litigate class actions, which serve as private enforcement tools to police defendants who engage in misconduct. *See id.*, at *23. "The public benefits when attorneys undertake a complex commercial case that implicates consumer protections and data privacy." *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, 2022 WL 2063864, at *21 (S.D.N.Y. June 8, 2022)

Here, the fees that Class Counsel seek reflect their hard work and time expended in this Litigation. As a direct result of this Litigation, Mount Sinai ceased using the Meta Pixel on its Web Properties. This change benefits Class Members whose health information remains in Defendant's possession. Given that the individual damages here are too small to justify separate lawsuits, class action litigation was the most realistic and effective means of vindicating Class Members' rights. Without such litigation, Mount Sinai's allegedly unlawful practices would likely have continued unchecked. The requested fees should be awarded to ensure that attorneys who represent individuals who would not otherwise be able to obtain any recovery are compensated. For these reasons, public policy considerations support the approval of Class Counsel's requested fee.

### F.    Class Counsel's Fee Request is Reasonable Under a Lodestar Cross-Check.

Courts may confirm the reasonableness of a percentage of the recovery awarded by cross-checking it with Class Counsel's lodestar. *See, e.g.*, *Goldberger*, 209 F.3d at 50 ("[T]he lodestar remains useful as a baseline ... we encourage the practice of requiring documentation of hours as

16

a 'cross check' on the reasonableness of the requested percentage."). The lodestar analysis is performed by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. In assessing the reasonableness of attorneys' hourly rates, courts typically consider the prevailing local market rates for similar services by lawyers of reasonably comparable skill, experience and reputation. *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998). However, "a district court may use an out-of-district rate…if it is clear that a reasonable, paying client would have paid those higher rates[.]" *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 191 (2d Cir. 2007).

This Litigation presented complex legal and factual issues, and for this reason, Class Counsel in Chicago were retained who have extensive expertise in data privacy and class action litigation. The hours worked, lodestar fee, and expenses for Class Counsel are set forth in the Almeida Declaration submitted herewith. To date, Class Counsel have expended approximately 762.95 hours on this Litigation. *See* Almeida Decl. ¶¶ 60-62. Class Counsel's current time does not include the time Class Counsel will spend drafting the Final Approval Motion and preparing for and attending the Final Approval Hearing on October 24, 2025, nor does it include the time that Class Counsel will spend on behalf of Class Members after the filing of this motion and while the Settlement administration process continues. *See, e.g.*, *Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time.").

Class Counsel's lodestar amounts to $594,342.55. *See* Almeida Decl. ¶¶ 60-62 ($588,342.55 lodestar from Almeida Law Group and $6,000 from local counsel). Class Counsel's fee request thus seeks to apply a multiplier of 2.80 to their lodestar, which is in line with the range

17

of multipliers routinely approved in the Second Circuit. *See, e.g.*, *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (explaining multiplier of 5.3 was "not atypical"); *Marin v. 310 Bowery Grp. LLC*, 2025 WL 2267785, at *7 (S.D.N.Y. Aug. 8, 2025) (approving lodestar multiplier of 2.39); *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *10 (S.D.N.Y. Sept. 29, 2022) (approving lodestar multiplier of 2.15); *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 2021 WL 2453972, at *5 (S.D.N.Y. June 15, 2021) (approving lodestar multiplier of 2.5); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d at 401 (reducing lodestar multiplier to 2.8 and finding it reasonable). Indeed, this Court has recognized that, "it is not uncommon for fees to be awarded that reflect multiples of plaintiffs' counsel's lodestar." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 668 (S.D.N.Y. 2015) (collecting cases granting multipliers of 1.41, 2.8, and 3.5). Accordingly, the lodestar cross-check further supports the requested fee award.

## III.    CLASS COUNSEL'S REQUEST FOR COSTS AND EXPENSES SHOULD BE APPROVED.

A trial court may award nontaxable costs that are authorized by law or the parties' agreement. *See* Fed. R. Civ. P. 23(h). Class Counsel requests reimbursement of reasonable litigation expenses in the amount of $16,403.60 in expenses incurred in prosecuting this Litigation. *See* Almeida Decl. ¶ 64. These costs include, among other things, court-filing fees, service costs, consulting expert fees, e-discovery, case-related travel, and mediation-related expenses. *Id.* Courts consistently recognize that counsel may recover their "reasonable out-of-pocket expenses." *Wynne v. City of New York*, 2024 WL 5049770, at *4 (S.D.N.Y. Dec. 10, 2024). Class Counsel's costs and expenses are reasonable given the scope of this Litigation to date, are documented on the books of Class Counsel, and are reasonable in relation to the Settlement Fund.

This Litigation was undertaken on a wholly contingent basis and from the outset, Class Counsel understood that it was embarking on a lengthy and potentially expensive litigation with

18

no guarantee of compensation. *See, e.g.*, Almeida Decl. ¶ 49. Indeed, "[t]he fact that Class Counsel was willing to expend their own money, where reimbursement was entirely contingent on the success of this litigation, is perhaps the best indicator that the expenditures were reasonable and necessary." *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at \*23 (S.D.N.Y. Sept. 9, 2015). In determining to pursue this Litigation, Class Counsel was obliged to ensure that sufficient resources were dedicated to the prosecution of this litigation and that funds were available to advance out-of-pocket costs. Class Counsel did in fact advance these costs even though there was no assurance that the Class would recover against Mount Sinai.

The costs and expenses advanced by Class Counsel, totaling $16,403.60, have benefited all Class Members and are of the type normally incurred in a complex litigation such as this one, and which are routinely approved by courts in this circuit. *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 2020 WL 7481292, at \*2 (S.D.N.Y. Dec. 18, 2020) ("The cost reimbursement requested by Class Counsel are for expenses typically billed by attorneys to paying clients in the marketplace and includes fees paid to experts, mediation fees, notice costs, computerized research, document production and storage, court fees, reporting services, and travel in connection with the litigation."); *River Light V, L.P. v. Lin & J Int'l, Inc.*, 2015 WL 3916271, at \*15 (S.D.N.Y. June 25, 2015) (approving costs "including costs of forensic experts, translation and travel services, settlement and mediation services, depositions, and other miscellaneous expenses"). Ultimately, Class Counsel's request for costs and expenses is reasonable and should be approved by the Court.

## IV.    PLAINTIFFS' REQUESTED SERVICE AWARDS SHOULD BE APPROVED.

Plaintiffs request Service Awards of $2,500 per Class Representative, totaling $7,500. "Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming

and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 483 (S.D.N.Y. 2013) (granting service awards ranging from $5,000 to $7,500 per named plaintiff).

Here, Plaintiffs' participation was critical to the ultimate success of the case. The Class Representatives stepped forward to place their names on the complaints and provided support to this Litigation and valuable information about their experiences with Mount Sinai. *See* Almeida Decl. ¶¶ 38-44 & 51-53. Plaintiffs kept in regular contact with their lawyers to receive updates on the progress of the case. *Id.* ¶ 40. And Plaintiffs were actively consulted during the settlement process. *Id*. Plaintiffs' willingness to participate meaningfully and shoulder the burdens of serving as class representatives contributed directly to the favorable outcome secured for more than 1.3 million Class Members.

On these facts, the $2,500 Service Awards are fair and reasonable. Importantly, the requested Service Awards are in line with others for similar cases within the Circuit. *See, e.g.*, *Montalvo*, 2018 WL 7825362, at *5 (approving service award of $10,000); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (noting case law supports payments of between $2,500 and $85,000). For their past and continuing dedication to the Settlement Class, Class Counsel respectfully requests that the Service Awards be approved for Named Plaintiffs Ronda Cooper, Coral Fraser, and Gilbert Manda.

## CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that this Honorable Court approve the requested Attorneys' Fees Award, Attorneys' Costs and Expenses, and Service Awards sought herein.

Dated: September 30, 2025                    */s/ David S. Almeida*
                                             David S. Almeida

Britany A. Kabakov
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
(708) 529-5418
david@almeidalawgroup.com
britany@almeidalawgroup.com

James J. Bilsborrow
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, New York 10003
(212) 558-5500
jbilsborrow@weitzlux.com

*Attorneys for Plaintiffs*
*& the Settlement Class*

21

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 30, 2025, I electronically filed this Notice of Motion and accompanying documents with the Clerk of Court using the CM/ECF system, which sent electronic notification of such filings to all attorneys of record.

<u>/s/ *David S. Almeida*</u>
David S. Almeida

22